UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CAMILLE HENLEY,

            Plaintiff,

      v.                                                    CASE NO. 8:19-CV-3011-T-MAP

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____/

## **ORDER**

       This is an action for review of the administrative denial of disability insurance benefits

(DIB) and period of disability benefits.  *See* 42 U.S.C. § 405(g).  Plaintiff contends her case should

be remanded to the Commissioner because the Administrative Law Judge (ALJ) erred in weighing

the opinion of consultative examiner Joao Fontoura, M.D. and in discounting Plaintiff's subjective

complaints of pain in light of her 35 years of consecutive work history.  After considering the

administrative record (doc. 13) and the parties' briefs (docs. 16, 18), I agree with the

Commissioner.  The ALJ's decision that Plaintiff is not disabled is supported by substantial

evidence. I affirm.[1]

       *A.     Background*

       Plaintiff Camille Henley alleges she became disabled on May 25, 2015, when she was 52,

due to discomfort in her right arm, shoulder, and hand; hypertension; and migraines. (R. 15)

Plaintiff is a high school graduate, and she attended college for two years. (R. 46)  Plaintiff has

extensive work history: she worked for 35 years as a supervisor in a student loan department,

---

[1]  The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

where she managed between 12 and 14 people. (R. 40)  She lost her job in May 2015 (her onset

date) because her division closed. (R. 34)  Plaintiff's date of last insured (DIB) is December 31,

2020; she must show she became disabled by this date to receive benefits. (R. 17)

Plaintiff testified that she spends her days resting at home and taking long walks "to analyze

what my life [is] like right now." (R. 38)  Her right shoulder, arm, and hand "give[] out completely"

when she tries to carry things. (*Id.*)  She explains that "[s]ometimes I can, like I can do like a little

minor thing, but the majority of things that I need to do, I am unable to do." (R. 36)  She has two

children, a daughter who was 26 years old on the date of the hearing and an 11-year-old son. (R.

36-37)  She and her son live at her daughter's house, and her daughter helps with the cleaning,

laundry, cooking, and childcare.  Plaintiff attends physical therapy two to three times a week to try

to improve her right extremity mobility and strength. (R. 37)  She testified that ibuprofen helps the

pain "but doesn't stop the pain altogether." (*Id.*)

After a hearing, the ALJ found that Plaintiff suffers from the severe impairments of "right

shoulder tear, hypertension and migraine headache[s]." (R. 18)  The ALJ determined that Plaintiff,

despite these impairments, retained the RFC to perform light work with these limitations:

> [Claimant] can lift and carry 20 pounds occasionally; can lift and carry 10 pounds
> frequently; can stand and walk for 6 hours in an 8-hour workday; can sit for 6 hours
> in an 8-hour workday with normal and customary breaks; should avoid climbing
> ropes, scaffolds and more than 5 steps on a ladder; can frequently climb ramps and
> stairs; can frequently climb less than 5 steps on a ladder; can frequently balance,
> stoop, kneel or crouch; can occasionally crawl; can frequently reach bilaterally; can
> occasionally overhead reach bilaterally; can frequently handle bilaterally; should
> avoid concentrated exposure to extreme cold, extreme heat and excessive vibration;
> and should avoid even moderate use of hazardous industrial machinery.

(R. 18)

In a December 18, 2018 decision, the ALJ found that, with this RFC, Plaintiff could perform her past job as a customer service representative supervisor. (R. 23)  In doing so, the ALJ consulted a vocational expert ("VE").  Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review. (R. 1-6)  Her administrative remedies exhausted, Plaintiff filed this action.

> B.      *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations.  These regulations establish a "sequential evaluation process" to determine if a claimant is disabled.  *See* 20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a)(4).  Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the

claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C.     *Discussion*

1.     *ALJ's consideration of Dr. Fontoura's opinion*

Plaintiff argues the ALJ erred in discounting consultative examiner Dr. Fontoura's December 2016 opinion that Plaintiff is unable to lift and carry things with her right arm (Doc. 12 at 4-15). The Commissioner responds that the ALJ properly assigned only moderate weight to Dr. Fontoura's opinion because it was inconsistent with the medical evidence and with the examiner's

own observations (Doc. 18 at 5-9).  I agree with the Commissioner that the ALJ's consideration of Dr. Fontoura's opinion is supported by substantial evidence.

The method for weighing medical opinions under the Social Security Act is found in the regulations at 20 C.F.R. § 404.1527(c).[2]  Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment."  20 C.F.R. § 404.1527(d)(2).  With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8).  Indeed, the ALJ must state the weight given to different medical opinions (those of treating and non-treating physicians) and why.  *Id*.  Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the

---

[2]  This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed her claim in July 2016.

claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Dr. Fontoura examined Plaintiff once, on December 31, 2016, at the agency's request. (R. 306-12)  He did not review her treatment records beforehand; instead, he based his report on his observations and examination of Plaintiff and Plaintiff's account of her medical history.  Plaintiff recalled to him that her right arm pain began unexpectedly four years earlier, with no triggering event. (*Id.*)  Her pain was growing worse.  She struggled to lift and carry things with her right arm, and the discomfort kept her awake at night.  Plaintiff also described migraine headaches, which she associated with her hypertension. (*Id.*)

After examining Plaintiff, Dr. Fontoura reported she had full strength in all muscles except her right deltoid.  He observed that Plaintiff had "[n]o joint swelling, erythema, effusion, tenderness or deformity.  The patient was unable to lift, carry and handle light objects.  Patient was able to perform fine motor skills such as opening doors, buttoning shirts, manipulating a coin, etc." (R. 308)  Plaintiff had reduced range of motion in the categories of right extremity forward elevation, abduction, and external rotation.  In the section of his report titled "Impressions," Dr. Fontoura summarized his findings:

> The patient reports a four-year history of right shoulder pain, which has made [it] hard for her to sleep.  She is unable to lift or carry things with her right arm.  This has been progressive in nature.  Previously, she received injections for the pain, but these stopped working after some time.  *She is unable to use the arm for prolonged periods of time and has a very significantly reduced range of motion.  On my exam, she is unable to use the arm for more than light lifting such as books or just a single book or different articles.*  She reports difficulty writing for prolonged periods of time as she is right handed.  She finds it hard to sleep secondary to the pain.  She does have significantly reduced range of motion.  There is no visible deformity or swelling to the right shoulder.

(R. 309)  (emphasis added).

The ALJ's opinion outlined Dr. Fontoura's report in two places (R. 19, 22), and ultimately the ALJ assigned moderate weight to the doctor's opinion that Plaintiff's hypertension is under control. The ALJ then found Dr. Fontoura's opinion about Plaintiff's right arm limitations "not consistent with the other evidence in the record. For example, the record showed no tenderness to palpation in the right upper extremity. She displayed 0 to 110 degrees of active range of motion. There was no evidence of joint instability." (R. 22)

Substantial evidence supports the ALJ's decision to discount Dr. Fontoura's opinion. To begin, as a one-time consultative examiner, Dr. Fontoura's opinion was not entitled to any special consideration by the ALJ. In other words, the ALJ did not need to articulate good cause for rejecting Dr. Fontoura's findings. Also, Dr. Fontoura authored his report in December 2016. Plaintiff had a right side x-ray and MRI performed after that date, which confirmed degenerative changes to her right shoulder – she had a right rotator cuff tear, biceps tendinitis, and arthritis in her joints. But Plaintiff's treatment records after Dr. Fontoura's consultative examination document conservative treatment and continued improvement in her right arm strength and mobility.

In April 2014, Plaintiff (who was still working at the time) reported to Asef Mahmud, M.D. at USF Health that her arm hurt at work if she did not support it. "She has to internally rotate and support her arm for relief. She works in an office setting and is on her keyboard all day." (R. 234) She reported that the pain "has not limited her activities of daily living," and 800 mg of ibuprofen improved her symptoms somewhat. (R. 239) Plaintiff did not want to pursue surgery for her rotator cuff tear and instead chose a steroid injection. In March 2016 (about 10 months after her onset date), Plaintiff began treating with Leslie Mangual, A.R.N.P., of Tampa Family Health Centers for

hypertension. (R. 277)  She did not mention shoulder pain to Ms. Mangual until an August 2016 appointment, when she was prescribed Diclofenac Sodium twice a day for pain. (R. 263, 268) Plaintiff reported for her annual physical the next month and again reported right shoulder pain. (R. 294)  Although there was "no pain in the distal extremities, no arthralgias, and no localized joint swelling," (R. 296) Ms. Mangual noted "crepitus present in the right glenohumeral joint." (R. 298)

Dr. Fontoura authored his report in December 2016.  Then, in January 2017, Ms. Mangual ordered a right shoulder x-ray (R. 299), which showed "right shoulder degenerative osteophytes off the inferior acromioclavicular joint." (R. 313)  After that, Plaintiff treated at the Tampa Institute for Pain and Spine where, in November 2017, she reported a 10/10 on the pain scale and said the pain is "aggravated by movement and repetitive use of her right arm." (R. 324)  But, "after having right SASD bursa and biceps tendon steroid injections.  She feels 70% better with increased range of motion of her right shoulder." (R. 317)  She stopped taking Diclofenac Sodium and started taking 800 mg ibuprofen.  Her providers recommended medication management and steroid injections as needed for her pain and physical therapy. (R. 320)

Plaintiff pursued physical therapy in 2017 and 2018 at CORA Physical Therapy in Tampa. In October 2017, Plaintiff reported that steroid injections helped her right shoulder pain temporarily but that pain medications did not alleviate her symptoms. (R. 333)  Reaching overhead hurt, her hands cramped at night, and she had to lift objects with both hands, or just her left hand. By November 2017, after twice weekly physical therapy sessions, she had made "significant improvements in overhead motion allowing her to reach just overhead and use [right arm] to wash hair." (R. 343)  After 12 sessions, she also showed significant improvements in her functional

endurance, although she continued to have pain. (R. 361)  By May 2018, she had overall improvement and was "able to lift jug of milk with [right upper extremity] and sustain 2.5# lift [overhead], groom hair and reach [overhead] without difficulty, although pt remains guarded and cautious with movement with fear avoidance." (R. 376)  Finally, in June 2018, Plaintiff had a right shoulder MRI that showed a rotator cuff tear and biceps tendinitis. (R. 430)  Later that month, physician's assistant Ronald Kubus evaluated Plaintiff for her right shoulder symptoms. (R. 431) He stated:  "I have reviewed the patient's MRI today and discussed conservative vs. surgical treatment.  Patient would like to continue with conservative treatment due to symptom relief with physical therapy and injections." (R. 433)

Against this backdrop, based on his review of all the evidence, the ALJ found Plaintiff capable of performing light work but limited her RFC to lifting and carrying 20 pounds occasionally and 10 pounds frequently and found she can frequently reach and handle bilaterally and occasionally reach overhead. (R. 18)  After considering the medical evidence summarized above, there is substantial evidentiary support for the ALJ's decision to discount Dr. Fontoura's more stringent right extremity limitations.  Also, Dr. Fontoura noted Plaintiff's comment that she cannot lift or carry anything with her right arm, but that was not his conclusion.  After examining Plaintiff, he found instead that she can lift and carry light objects, such as books, with her right hand and arm. (R. 309)  Notably, Plaintiff testified she can use her hands for two to three hours before they begin hurting and that sometimes they do not hurt at all. (R. 41-42)  In fact, she testified that her onset date (May 25, 2015) corresponds with the date her company closed the student loan division where she worked; she stopped working because she was let go.

9

Although Plaintiff does not challenge her RFC determination directly, to the extent Plaintiff claims the ALJ erred because the RFC he formulated differs from the limitations Dr. Fontoura identified, this is meritless.  A claimant's RFC is the most work she can do despite any limitations caused by her impairments.  20 C.F.R. § 404.1545(a)(1).  In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence.  20 C.F.R. § 404.1545(a)(2),(e).  An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence.  *McCruter v.  Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).  Under the statutory and regulatory scheme, however, a claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c).  Here, he has done so for the reasons stated above.

At this point in my analysis, I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019).  "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Id.*  I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision.  *See Bloodsworth*, 703 F.2d at 1239.  Considering this, there is substantial evidentiary support for the ALJ's decision to discount the functional limitations assessed by Dr. Fontoura.

10

2.      *ALJ's consideration of Plaintiff's work history*

Plaintiff's next contention is that the ALJ's decision to discount her complaints of disabling pain ran afoul of the Eleventh Circuit's pain standard, because the ALJ did not discuss Plaintiff's 35 years of work history (Doc. 16 at 15-17).   Specifically, Plaintiff "is not suggesting that the credibility factor of work history automatically carries more weight than the other factors, or that her remarkable work history trumps other factors and/or necessarily entitled her to enhanced credibility." (Doc. 16 at 17).   Instead, she argues the ALJ's clear disregard of her work history requires remand.

The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints.   The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.   *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).   When the ALJ decides not to credit a claimant's testimony as to his pain, she must articulate explicit and adequate reasons for doing so.   *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character."   *Id.*   Adjudicators, as the regulations dictate (*i.e.*, 20 C.F.R. § 404.1529), are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record.   *Id.*   The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory

11

findings.  20 C.F.R. § 404.1529.  "Other evidence," again as the regulations define, includes

evidence from medical sources, medical history, and statements about treatment the claimant has

received.  *See* 20 C.F.R. § 404.1513(b)(2)-(6).  In the end, credibility determinations are the

province of the ALJ.[3]  *Mitchell,* 771 F.3d at 782.

Here, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain

complaints:

> After consideration of the evidence, I find that the claimant's medically
> determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity, persistence
> and limiting effects of these symptoms are not entirely consistent with the medical
> evidence and other evidence in the record for the reasons explained in this decision.

(R. 22)  This language directly addresses the Eleventh Circuit's pain standard and is not improper

*if* supported by substantial evidence.  *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL

1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, I find that it is.  The ALJ evaluated various factors, including Plaintiff's daily

activities, her improvement with physical therapy, treatment records, and other factors concerning

her functional limitations.  *See* 20 C.F.R. § 404.1529(c)(3).  Although the ALJ did not specifically

discuss the length of Plaintiff's work history, he did elicit testimony from the VE at the hearing

about Plaintiff's past relevant work, and Plaintiff's certified earnings record was a part of the

administrative record.  Thus, I find no error in this or any other aspect of the ALJ's credibility

analysis. *See Neff v. Saul,* No. 18-cv-3040-T-SPF, 2020 WL 1181952, at *5 (M.D. Fla. Mar. 12,

2020) (upholding credibility analysis despite not explicitly discussing plaintiff's work history,

---

[3] The SSA no longer uses the term "credibility" when assessing if a claimant's subjective
complaints are consistent with and supported by the record.  Because the parties employ this term
in their briefs, however, I utilize it here for consistency and ease of reference.

12

because ALJ obviously considered it when he elicited testimony from VE about past relevant work and had access to plaintiff's earnings record); *Crowley v. Berryhill*, No. 3:18-cv-460-J-JBT, 2019 WL 587423, at *2 (M.D. Fla. Jan. 3, 2019) (same); *Coleman v. Astrue*, No. 8:11-cv-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (same).

     D.    *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The Commissioner's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on February 1, 2021.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

13